POFFENBERGER ET AL., APPELLANTS, *v.* BOARD OF REVISION OF CLERMONT COUNTY ET AL., APPELLEES.

(No. CA635—Decided October 12, 1977.)

*Messrs. Santen, Santen & Hughes,* and *Mr. Gary R. Hoffmann,* for appellants.
*Mr. Robert P. Ringland,* for appellees.

BETTMAN, J. This case arises from a complaint as to the valuation of appellants' property determined by the Auditor of Clermont County for the tax year 1973. The valuation fixed by the Auditor was upheld by the Board of Revision and the Court of Common Pleas. Appellants assign three errors, the essence of which is that the trial court's decision is contrary to law. The underlying question presented is whether a county auditor may lawfully fix the tax value of a parcel of real estate solely on the basis of its fair market value while at the same time fixing the value of comparable properties by a different method.

The evidence, all of which was stipulated, was that appellants own 215 acres of agricultural land located

within a triangle formed by Woodville Pike, Deerfield Road and State Route 132 in Goshen Township, Clermont County. Appellants' land is agricultural but, lying east of Milford and Loveland, Ohio, is in the path of urban development. Its highest and best use is for residential development. All other parcels of real estate reviewed in evidence are similarly situated and all evidence as to values refers to land only, without improvements. Values of this type of real estate are determined on per acre basis.

On the 1972 tax duplicate, in carrying out the mandatory sexennial appraisal of all parcels in the county, the County Auditor fixed the tax valuation of appellants' parcels at $20,300, or $94 per acre. On the 1973 duplicate he raised the tax value to $70,500, or $326 per acre. This value was based on 35 per cent of a fair market value of $200,000, the price at which the property had sold on October 10, 1972.

Evidence was introduced by appellant as to the 1973 assessed valuation of seven other parcels. Appellees stipulated that these seven parcels had similar utilities, access, zoning and the same characteristics as appellants' parcels. All were located within the same triangle mentioned above, in Goshen Township. These properties, none of which had been sold subsequent to the 1972 county-wide appraisal, were assessed at values ranging from $107 to $189 per acre. The average assessed value per acre of the seven "comparable" parcels was $129. In other words, the assessed valuation of appellants' land was 150 per cent greater than that of comparable surrounding land.

To justify the assessment, appellees introduced, by stipulation, an appraisal comparing appellants' parcels with four other parcels located in the same triangle. This appraisal was "as of January 1, 1975." However, it was offered by appellees in support of the 1973 appraisal and stated: "* * * [T]he time span for speculative development land is not significant in this case." From this we must assume that the true value of all parcels considered in the case was substantially the same on both January 1, 1973, and January 1, 1975.

The value set by the appraiser for appellants' land was made on the basis of the recent sale prices of appellants' parcels and the four "comparable" parcels. By this method, the Auditor sought to justify his position that the value fixed was in accordance with law and the words of the Supreme Court that " * * * the value, or true value in money of property for the purpose of taxation, is the amount which should result from a sale of such property on the open market." *State ex rel. Park Investment Co.* v. *Bd. of Tax Appeals* (1964), 175 Ohio St. 410, 412. As we shall discuss hereinafter, the lawful determination of value involves further considerations.

What to us was evidence of critical significance is that two of the parcels shown in the appellees' appraisal as "comparables" were among the seven "comparables" listed by appellants in their complaint. The first, owned by one Dorme, Inc., was assessed on the 1973 duplicate at a value of $107 per acre. Appellees' appraiser valued this parcel at $2,121 per acre which, using the 35 per cent formula, would make its per acre value, for tax purposes, $742. The second, owned by one Stephens, was assessed on the 1973 duplicate at $126 per acre. The appraiser placed its fair market value at $3,013 per acre which, again applying the 35 per cent formula, would make its per acre value, for tax purposes, $1,055.

In other words, by proof offered by the Auditor himself, parcels in the immediate proximity and comparable to appellants' land were valued for tax purposes by some "method" which resulted in their being listed for tax purposes at one seventh to one eighth of what they should have been had he used the same "method" applied to appellants' parcels.

Section 2, Article XII, of the Ohio Constitution has provided since the founding of the state that "Land and improvements thereon shall be taxed by uniform rule according to value." As far back as 1853, the Supreme Court said in *Exchange Bank of Columbus* v. *Hines* (1853), 3 Ohio St. 1, 15:

"What is meant by the words '*taxing by a uniform*

*rule'*? an'd to *what* is the rule applied by the constitution?' No language in the constitution, perhaps, is more important than this; and to accomplish the beneficial purposes. intended, it is essential that they should be truly interpreted, and correctly applied. *'Taxing'* is required to be *'by a uniform rule;'* that is, by one and the same unvarying standard. Taxing by a uniform rule requires uniformity,. not only in the *rate* of taxation, but also uniformity in the *mode* of assessment upon the taxable valuation. Uniformity in taxing implies equality in the burden of taxation; and this equality of burden cannot exist without uniformity in the mode of the assessment, as well as in the rate of taxation.''

Despite foot-dragging by the taxing authorities, the Supreme Court of Ohio has consistently held that within the limits of feasibility the Constitution mandates uniformity and equality in the determination of the taxable values of real property. *State, ex rel. Park Invest. Co.,* v. *Bd. of Tax Appeals* (1971), 26 Ohio St. 2d 161, and cases cited therein.

In *Griffith* v. *Clermont County Bd. of Revision,* unreported, First Appellate District, No. CA 546, decided April 14, 1975, and *Sidio* v. *Clermont County Bd. of Revision,* unreported, First Appellate District, No. CA 550, decided, June 30, 1975, we concluded that where comparable properties are subjected to unequal methods of valuation, the principle pronounced in paragraph one of the syllabus of *Koblenz* v. *Board of Revision* (1966), 5 Ohio St. 2d 214, governed. We consider that principle applicable to the facts before us. That paragraph states:

''In a situation involving the assessment of real property for tax purposes where it is impossible to secure both the statutory standard of true value in money and the uniformity and equality required by the Ohio Constitution and the United States Constitution, the latter requirements are to be preferred as the just and ultimate purpose of the law.''

In *Koblenz,* the taxpayers showed that their properties were valued for tax purposes at a higher percentage

of fair market value than the prevailing average ratio of assessed value to fair market value of property in Cuyahoga County. Here the stipulated evidence demonstrated that seven other absolutely comparable properties were valued at little more than one-third of the valuation placed on appellants' parcels. These seven parcels stipulated as comparable are not only located in the same triangle as appellants' property but one parcel immediately abuts appellants' land and several are but one parcel removed. No evidence is before us that other comparable properties had their 1973 assessed values increased over the 1972 assessed values.*

Only one conclusion can be drawn from this evidence —namely, that the County Auditor placed a discriminatory value on appellants' property simply because the property had been sold just prior to the time the tax values were fixed.

Appellees contend that since they applied the same 35 per cent factor to the true value of appellants' property as they applied to all property throughout the county which had been sold after the 1972 sexennial reappraisal and prior to the preparation of the 1973 tax duplicate, they have complied with the requirements of *Koblenz* for taxation by uniform rule. This interpretation misconstrues the core of the holding in *Koblenz*.

In simple terms, the court there held that everyone is to be treated the same way. It reiterated the principle enunciated in *Exchange Bank of Columbus* v. *Hines, supra,* that taxing by uniform rule requires "the same unvary-

---

*In the appraisal placed in evidence by appellees, the assessed value of the four properties considered comparable by the appraiser is not shown. As discussed hereinbefore, we do have before us the 1973 assessed valuation of two of the parcels. From the totality of the evidence one can logically infer that the Auditor's "method" was to carry over from year to year the 1972 valuations unless a parcel was sold. In that event, he raised the assessed valuation to 35 per cent of the sale price. Doubtless other properties in the county were sold after the 1972 sexennial reappraisal and prior to preparation of the 1973 duplicate and, consequently, had their 1973 assessed values increased accordingly. However, evidence of this is not before us.

ing standard" for all. If the method of determination of the value of one man's property is different than the method used to determine the value of his neighbor's property, as it patently was here, the result must inevitably be just as nonuniform and unequal as where a different percentage of value is applied to values determined by like methods.

Appellees argue that the County Auditor cannot reasonably reassess every parcel in the county every year and is therefore justified in allowing assessed values to remain the same from one sexennial appraisal to the next, changing only the values of parcels which are sold in the interim and reassessing these alone on the basis of the sale price. We do not hold that the Auditor must reassess every parcel annually. We do hold, however, that the Auditor must comply with the constitutional mandate of uniformity of method and equality in result. This was further his statutory duty. In 1973, R. C. 5713.01 provided in pertinent part:

"The auditor shall revalue and assess at any time all or any part of the real estate in such county where he finds that the same has changed in value or is not on the tax list at its taxable value. He may increase or decrease the value of any lot or parcel of real estate in any township, municipal corporation, or other taxing district by an amount which will cause all real property on the tax list to be assessed at its taxable value, or he may increase or decrease the aggregate value of the real property, or any class of real property, in the county, township, municipal corporation, or other taxing district, or in any ward or other division of a municipal corporation by a per cent or amount which will place such property on the tax list at its taxable value *so that every class of real property shall be listed and valued for taxation by an equal and uniform rule.*" (Emphasis added.)

Reassessing only parcels sold while not reassessing comparable properties, as is here demonstrated by the evidence and sought to be justified by appellees' argument, is not valuation by uniform rule. It does not pass constitutional nor statutory muster.

The evidence before the trial court is uncontradicted that the assessed valuation of appellants' land was discriminatory. In such circumstances, the trial court had a mandatory duty under R. C. 5717.05 to determine a valuation which would correct such discrimination. This section provides, in part:

"In correcting a discriminatory valuation, the court shall increase or decrease the value of the property whose valuation or assessment by the county board of revision is complained of by a per cent or amount which will cause such property to be listed and valued for taxation by an equal and uniform rule."

The decision of the trial court must therefore be reversed and the cause remanded for a redetermination by the trial court of the valuation of appellants' parcels in accordance with the requirements of the statute.

*Judgment reversed.*

SHANNON, P. J., and BLACK, J., concur.