WILL COUNTY BOARD OF REVIEW, Plaintiff-Appellee, *v.* ILLINOIS PROPERTY TAX APPEAL BOARD *et al.*, Defendants-Appellants.

Third District    No. 80-342

Opinion filed September 30, 1981.

Tyrone C. Fahner, Attorney General, of Chicago (Russell C. Grimes, Jr., Assistant Attorney General, of counsel), for appellant Illinois Property Tax Appeal Board.

Edward Petka, State's Attorney, of Joliet (Jose M. Nunes, Assistant State's Attorney, of counsel), for appellee.

Mr. JUSTICE BARRY delivered the opinion of the court:

This appeal originated with action by Will County Board of Review fixing the 1977 assessed valuation of certain commercial property at figures higher than the involved taxpayers were willing to accept. One property was owned by Chicago/Joliet Livestock Marketing Center, Inc., and the other was owned by Kerr Glass Company. Both taxpayers appealed to the State Property Tax Appeal Board (PTAB), where the Chicago/Joliet appeal was heard on March 26, 1979. An appraiser testified for the taxpayer that, utilizing a cost approach, he had determined the fair market value of the property to be $2,677,000. The Board of Review submitted its property records showing the assessed valuation to which it had applied the statutory factor of 33 1/3 percent (Ill. Rev. Stat. 1977, ch. 120, par. 627), to reach an assessment of $1,358,430. The PTAB found the fair market value of the Chicago/Joliet property to be $2,677,000, as claimed by the taxpayer, and then applied a factor of 29.57 percent based upon the Will County urban weighted median level of assessments for 1977 as furnished by the State Department of Local Government Affairs. As a result, the PTAB lowered the Board of Review's assessment of the Chicago/Joliet property from $1,358,430 to $791,580. The 29.57 percent factor was computed by using real estate sales data for the year 1976.

The Kerr appeal was heard by the PTAB on May 10, 1979. The taxpayer's appraisers testified to a fair market value of $4,700,000, while the county supervisor of assessments testified to a fair market value of $6,000,000. The PTAB found the fair market value to be $4,700,000 and again applied a 29.57 percent factor to reduce the assessed valuation from the Board of Review figure of $1,999,480 to $1,390,000.

The Will County Board of Review then sought administrative review of both decisions in the Circuit Court of Will County where the two cases

were consolidated. Ultimately the court affirmed the fair market values fixed by the PTAB but ruled that the PTAB exceeded its authority in applying a "multiplier" of 29.57 percent and that the statutory factor of 33 1/3 percent should have been used instead.

■■ The PTAB appealed from that ruling as to both properties. Since there was no cross-appeal as to the fair market values approved by the circuit court, those figures are not in dispute. The sole issue before this court is whether the PTAB erred in applying a factor of 29.57 percent to those values instead of the statutory rate of 33 1/3 percent.

Section 111.2 of the Revenue Act of 1939 (Ill. Rev. Stat. 1977, ch. 120, par. 592.2) authorizes the PTAB to "establish by rules an informal procedure for the determination of the correct assessment of property which is the subject of an appeal." Section 111.4 of the Revenue Act provides that decisions of the PTAB "shall be based upon equity and the weight of evidence * * *." One of the rules of the PTAB, established pursuant to section 111.2, is Rule 4D, which provides:

> "The decisions of the Property Tax Appeal Board will be based on equity and the weight of evidence. The County's median level of assessments will be considered where sufficient probative evidence is presented indicating the estimate of full market value and the subject property on the relevant real property assessment date of January 1 * * *."

Looking at the two cases which are the subject of this appeal, we think the ruling of the PTAB that the median level of assessments in Will County was 29.57 percent must have been based upon a finding that there was a disparity between the assessment level of this property and the assessment level for the county as a whole. Since both the statute and Rule 4D require the PTAB to determine "the correct assessment of property," the PTAB acted within its authority by taking into account the 1977 urban weighted median level of assessments which was presented as evidence at the hearing. The 29.57 percent figure was at least *prima facie* evidence that the level of assessments of like property within Will County was lower than the 33 1/3 percent figure used by the Board of Review for the assessment of the property of these taxpayers.

That the PTAB has authority to grant relief from disparity in levels of assessments within a county was established in *Stephens v. Property Tax Appeal Board* (1976), 42 Ill. App. 3d 550, 356 N.E.2d 355, where the reviewing court held that the PTAB erred in denying relief to a taxpayer assessed at 53 percent of fair market value while like property in the same taxing districts was assessed at 16 percent of fair market value. The court in *Stephens* expressly rejected the contention that the PTAB's jurisdiction was limited to the determination of fair cash value of the taxpayer's property. In the case at bar, the trial court erred in holding that the PTAB

exceeded its jurisdiction in doing what it was permitted to do under *Stephens*.

The next question is whether the PTAB could utilize a level of assessment figure that was derived from a one-year sales ratio study. The Revenue Act of 1939 provides that real property is to be valued at 33 1/3 percent of its fair cash value (Ill. Rev. Stat. 1977, ch. 120, par. 501) and then defines the term "33 1/3 %" as being determined by the Department of Local Government Affairs by using sales ratio studies for the three most recent years preceding the assessment year, "adjusted to take into account any changes in assessment levels implemented since the data for such studies were collected." (Ill. Rev. Stat. 1977, ch. 120, par. 482(24).) We think it significant that the Revenue Act, as just quoted, expressly permits the Department to make adjustments on the basis of new information after the three-year sales ratio studies are completed. This is exactly what the PTAB did in this case.

In *Lake County Board of Review v. Property Tax Appeal Board* (1980), 86 Ill. App. 3d 553, 407 N.E.2d 1022, the use of a factor based upon a one-year sales ratio study was held to be permissible under Rule 4D, if necessary in order to reach an equitable result, but the court said that use of a single-year factor was not mandated in every case. In the case at bar, there was no evidence challenging the correctness of 29.57 percent factor, and no evidence indicating that the use of that factor would produce an inequitable result. We find, therefore, that the PTAB decision was not contrary to the weight of the evidence and was not inequitable, and that the judgment of the circuit court of Will County must be reversed and the PTAB decision affirmed.

■■ We have taken with the case a motion by the Board of Review to supplement the record by filing in this court copies of the record in two other administrative review proceedings involving the assessments of these same properties for the year 1978. We have no authority to take any action relating to the 1978 assessment in an absence of a direct appeal from rulings thereon, and the 1978 assessment has no relevance to this proceeding. The motion is denied.

■■ The Board of Review has also urged this court to declare unconstitutional a 1980 amendment to section 111.2 of the Revenue Act, which expressly authorizes the use of a one-year assessment level based upon relevant sales during the previous year. (Ill. Rev. Stat. 1977, ch. 120, par. 592.2) Since this statutory amendment is not involved in the case before us, any ruling would be advisory and thus improper.

Reversed.

SCOTT, P. J., and ALLOY, J., concur.