COMMONWEALTH EDISON COMPANY, Plaintiff-Appellee, *v.* THE PROPERTY TAX APPEAL BOARD OF THE STATE OF ILLINOIS *et al.*, Defendants-Appellants (Valley View Community Unit School District No. 365U, Intervening-Appellant).

Third District   Nos. 3—83—0394, 3—83—0395, 3—83—0406 cons.

Opinion filed May 10, 1984.—Rehearing denied June 14, 1984.

SCOTT, J., concurring in part and dissenting in part.

Neil F. Hartigan, Attorney General, of Springfield (Kathryn A. Spalding, Assistant Attorney General, of counsel), for appellant Property Tax Appeal Board.

Edward F. Petka, State's Attorney, of Joliet (John X. Breslin, of State's Attorneys Appellate Service Commission, of counsel), for appellant Board of Review of Will County.

Barry L. Moss and George A. Marchetti, both of Moss & Bloomberg, Ltd., of Bolingbrook, for appellant Valley View Community Unit School District No. 365U.

Kenneth E. Timm and Douglas F. Spesia, both of Murphy, Timm, Lennon, Spesia & Ayers, of Joliet, for appellee.

JUSTICE STOUDER delivered the opinion of the court:

This appeal arises over the 1979 personal property taxes assessed against Commonwealth Edison (Edison) for personal property including operating equipment at two plants in Will County, Illinois. In 1979 the Will County Board of Review levied an across the board 10% increase in the assessed values on all personal property in Will

County allegedly to avoid the imposition of a multiplier by the Department of Revenue to equalize Will County assessed values with other assessed values in other counties throughout the State. Edison protested the 10% increase and filed a complaint with the board of review. The board of review then informed Edison that it would not change Edison's assessed valuation as so increased and therefore upheld the 10% increase.

Edison then appealed to the Property Tax Appeal Board (PTAB), claiming that their personal and real property were overvalued at both the Will County generating stations. The valuations used by Edison on its 1978 personal property tax return were values arrived at by agreement between Edison and the Will County taxing authorities. The gist of the agreement was that the utility's property would be debased 60% so that the assessed value would remain constant. This type of arrangement allegedly prevented an erosion of the utility's tax base and facilitated ratemaking which is dependent largely upon the value of a utility's property. The PTAB removed the 10% increase levied by the board of review but upheld the valuations which Edison had used on its 1978 property tax return over Edison's protest that these values were inaccurate and were overvaluations because they were arrived at pursuant to an agreement which the board had breached by its imposition of the 10% increase. The PTAB also refused to reduce Edison's fair market values by a 15% depreciation factor. Edison had alleged a depreciation factor existed with respect to the market value of its property because of Edison's failure to earn the rate of return allowed by the ICC which Edison's expert attributed in part to what he called "regulatory lag." The PTAB also refused to apply the assessment level which Edison sought to establish by use of an expert in the field of mathematics and statistics. The assessment level is a means by which the county can regulate assessed values within the county in the interest of uniformity much like the multiplier applied by the department to equalize assessed values throughout the State. The method which Edison sought to establish was based upon quarterly calculations of the sale price of property within the county rather than calculations based upon the whole year—the method employed by the PTAB and regularly used in protest cases.

Edison appealed the decision of the PTAB to the circuit court of Will County for review. The trial court reversed the PTAB decision and found that Edison had presented convincing evidence as to the proper assessed valuation of its operating equipment and other personal property and that the PTAB erred in not accepting Edison's

valuations presented at the hearing rather than Edison's valuations reflected on its 1978 tax return (the agreed valuations). The trial court also found that Edison should be allowed to reduce its fair market value by the 15% depreciation factor and that the method used by Edison to calculate the assessment level was correct and the county's method of calculation was against the manifest weight of the evidence. The trial court then found that the fair market value of the operating equipment at the Joliet Generating Station was $88,070,600 and $64,223,100 at the Will County Generating Station and also ordered that the fair market value of Edison's miscellaneous personal property be established at Edison's figures.

The appellants raise four basic issues for review. First, whether the trial court erred in reversing the decision of the PTAB as to the value of Edison's operating equipment and other personal property; second, whether the circuit court erred in allowing the 15% reduction in the fair market value of Edison's assets due to economic depreciation; third, whether it was error to apply the assessment level of 24.41% arrived at by Edison's expert in lieu of the 26.69% assessment level established by the PTAB and as a fourth issue the intervenor, the Valley View Community Unit School District No. 365U, raised the issue for the first time in the circuit court that Edison's operating equipment was improperly classified as personal property. The circuit court declined to treat this issue because it was not raised before the administrative agency.

■ Recently the Illinois Supreme Court in *People v. International Business Machines Corp.* (1982), 89 Ill. 2d 287, 432 N.E.2d 867, has again enunciated the standard of review of a property assessment for tax purposes. It is well settled in Illinois that a court will not review a property assessment for tax purposes unless there is a showing of fraud or constructive fraud. The taxpayer must present clear and convincing evidence that fraud was committed in the valuation of his property. The Illinois Supreme court set out the following guidelines for establishing constructive fraud.

> "Assessments that are disproportionately higher than those for similar property or assessments that are based on the assessor's own private opinion showing a lack of knowledge or lack of honest judgment *** overvaluation may be so excessive, under some circumstances, as to justify the conclusion that it was not honestly made." (89 Ill. 2d 287, 293.)

Whether constructive fraud is established is largely dependent upon the facts and circumstances, and in this case we find that Edison presented clear and convincing evidence that the assessor used an

arbitrary method of valuation for Edison's property by agreeing to debase all property by 60%. There is nothing in the statute which allows assessors to enter into agreements with taxpayers as to assessments. Such agreements destroy uniformity and contravene article IX of the Illinois Constitution which provides for uniform valuation of property unless specifically excepted by statute. The assessment upheld by the PTAB was based upon valuations which appeared on Edison's 1978 personal property tax return. These valuations were undisputedly reached by agreement of the parties and were not based upon any recognized method of valuation, *i.e.*, market value, income or market data approach. Therefore, we find that Edison presented clear and convincing evidence that the assessments were arbitrarily reached because the assessor did not follow recognized methods in arriving at these valuations. We find the reasonable approach when valuing property of a regulated utility to be one based on historic cost rather than fair market value because utility properties are specialized and are not commonly bought or sold on the market. This is the method agreed upon by all of the experts who testified. See Commonwealth Edison Co., Property Tax Appeal Board Docket Nos. 79-2354-I-2 and 79-2355-I-2 (April 6, 1983).

■ The circuit court was correct in reversing the PTAB as to the propriety of the property tax assessments established by the PTAB decision. However, the circuit court cannot determine the proper assessments. That is the sole function of the PTAB and is not within the scope of judicial review. *Consolidation Coal Co. v. Property Tax Appeal Board* (1975), 29 Ill. App. 3d 465, 331 N.E.2d 122.

■ Because we have determined that the property assessments were improper we theoretically need not consider the other issues raised on appeal. However, the use of the 15% economic depreciation factor and the 24.41% assessment level are both issues that are likely to arise in a subsequent proceeding. Therefore, we will consider the finding of the trial court that the PTAB decision not to use the 15% economic depreciation factor or the 24.41% assessment level, both of which were proposed by Edison's experts, was against the manifest weight of the evidence. We are persuaded that Edison's evidence of economic obsolescence was not so overwhelming as to make the PTAB's decision not to use such a factor clearly erroneous. To the contrary, as the PTAB points out there are many possible explanations for the "regulatory lag" which have nothing to do with property valuations. Also, Edison has not relied upon the 15% factor even in the proceeding before the ICC. Therefore, the circuit

court erred in finding the PTAB decision not to reduce the fair market value of Edison's property by a 15% depreciation factor against the manifest weight of the evidence.

■ We also do not find that the use of a 26.69% assessment level by the PTAB was against the manifest weight of the evidence as found by the circuit court. The statute authorizes the PTAB to "establish by rules an informal procedure for the determination of the correct assessment *** which is the subject of [the] appeal." (Ill. Rev. Stat. 1979, ch. 120, par. 592.2.) The PTAB promulgated Rule 4D, which requires that the taxpayer present evidence of the full market value of the subject property as a prerequisite to the use of the median assessment level by a county. This court held in *Will County Board of Review v. Property Tax Appeal Board* (1981), 100 Ill. App. 3d 506, 426 N.E.2d 1238, that it was permissible under Rule 4D for the PTAB to use a one-year sales ratio figure rather than a three-year sales ratio figure in arriving at an equitable result in determining the fair market value of taxpayer's property. This however is not what Edison is contending. Edison contests the method used by the PTAB to calculate the one-year sales ratio. The gist of Edison's claim is that the PTAB should have calculated the ratio quarterly rather than yearly. As the supreme court stated in *People ex rel. Wenzel v. Chicago North Western Ry. Co.* (1963), 28 Ill. 2d 205, 216, 190 N.E.2d 780:

> "Our statute requires only that the Department use such means as it deems 'proper and reasonable' to make its studies on assessed valuations, and a mere difference in opinion as to what is the best or most reasonable method is not sufficient to bring the matter within the range of judicial review."

We, therefore, decline to review the method by which the PTAB calculated the one-year sales ratio and find the trial court erred in so doing.

Because as a result of our decision this case will be remanded to the PTAB for further proceedings to determine the fair market value of Edison's operating equipment and other property in order to arrive at the proper assessment, we decline to decide any issue raised by the intervenor at this time. We, therefore, affirm the decision of the circuit court of Will County reversing the decision of the PTAB as to the fair market value of Edison's personal property, but reverse the circuit court as to its determination of actual assessments. This case is remanded to the circuit court of Will County with directions that it be remanded to the Property Tax Appeal Board of Illinois for further proceedings consistent with this opinion.

Affirmed in part, reversed in part with directions.

HEIPLE, J., concurs.

JUSTICE SCOTT, concurring in part and dissenting in part:

I concur with the results reached in the majority opinion except for its determination that the 15% depreciation factor should not be considered and applied in the valuation of Edison's property. This court has recognized that depreciation is an element which can properly be considered in arriving at the value of property. (See *Consolidation Coal Co. v. Property Tax Appeal Board* (1975), 29 Ill. App. 3d 465, 331 N.E.2d 122.) The majority opinion concludes that the depreciation factor was not proved by the manifest weight of the evidence before the Property Tax Appeal Board (PTAB). The circuit court upon review of the record held that "the uncontroverted evidence in these proceedings established the existence and propriety of economic depreciation." With this observation I agree.

Corroborated evidence was submitted to the PTAB comparing the rate of return allowed under relevant ICC rate orders with the rates of return actually earned by Edison for the years 1970 through 1979. In all of these years the rates of return earned were less than rates of return allowed, *i.e.*, allowable rates of return by ICC orders dated December 13, 1978, and October 12, 1977, were 9.03%. Edison's earned rates, however, were considerably less, being 8.12% in 1976, 7.48% in 1977, and 8.31% in 1978. The difference between the rate actually earned and that allowed was 12.7% less in 1976; 19.6% less in 1977, and 10.6% less in 1978. Testimony adduced by Edison was to the effect that the inability to earn the allowed rate of return in an inflationary economy results in a lower market value of the utility's assets. There was further testimony that the failure to earn the allowed rate of return was not related to incompetent management on the part of Edison.

Expert testimony presented to the PTAB explained that economic depreciation is the same as economic obsolescence in that it is a decline in value of property due to conditions or causes outside of the property.

In the *Consolidation Coal Co.* case, the reviewing court rejected a deduction as to the value of property based on the obsolescence factor because of conflicting evidence. In the instant case there is no conflicting evidence as to economic depreciation. It should be noted that at the hearing before the PTAB all the testimony was from witnesses for Edison. There were no rebuttal witnesses nor was con-

trary appraisal testimony presented.

The failure to earn the rate of return authorized by the ICC was not unique to Edison but as acknowledged by PTAB was a problem being experienced by the industry as a whole. This fact should negate a conclusion that Edison's failure to realize the allowable rate of return was caused by inefficient management or it must be concluded that such inefficiency permeated the entire industry.

PTAB does not strongly urge the argument of inefficient management but instead urges that the failure to realize the allowable rate of return is attributed to a regulatory lag. PTAB suggests that if a regulatory lag is the cause of Edison's problems, then Edison should seek a legislative amendment to the Public Utilities Act. This blithe assertion ignores the difficulties of changing the regulatory process so as to eliminate economic depreciation.

It is further argued that Edison did not rely on or present any evidence of the economic depreciation 15% factor in proceedings before the ICC. The record discloses and it is recognized in the majority opinion that for a number of years Edison and the Will County taxing authorities over a span of years had entered into an agreement as to the valuation for purposes of taxation as to the personal property of Edison. This agreed valuation was presented at hearings before the ICC and it can safely be surmised that we would not have the present litigation if the Board of Review of Will County had not broken the agreement by levying an across the board 10% increase on the assessed valuation of Edison's personal property. The ultimate valuation of Edison's personal property which results from the litigation will in the future be presented at the rate-setting hearings before the ICC.

There was comprehensive evidence of economic depreciation presented to the PTAB which was not adequately countered or refuted, and for this reason I disagree with the majority's conclusion that the 15% depreciation factor was not supported by the manifest weight of the evidence.