*In re* APPLICATION OF THE COUNTY TREASURER AND EX-OFFICIO COUNTY COLLECTOR OF COOK COUNTY (Edward J. Rosewell, Applicant-Appellee, v. Twin Manors West of Morton Grove Condominium Association, Objector-Appellant).

First District (3rd Division)   No. 87—2018

Opinion filed October 5, 1988.—Rehearing denied November 4, 1988.

Rosenthal & Schanfield, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Mark R. Davis, and Kevin P. Burke, Assistant State's Attorneys, of counsel), for appellee.

JUSTICE FREEMAN delivered the opinion of the court:

Objector-appellant, Twin Manors West of Morton Grove Condominium Association (Twin Manors), appeals from the trial court's

granting of a motion for summary judgment in favor of applicant-appellee, Edward J. Rosewell, the Cook County collector (collector). On appeal Twin Manors asserts that the collector assessed certain real estate at a disproportionately higher rate than comparable real estate located in the same township as the subject property, in violation of the equal protection of the law.

Twin Manors defines the underlying issue of the instant appeal as what is the proper geographic area in Cook County for purposes of proving a violation of equal protection in real estate tax matters. Twin Manors contends that the proper geographic area is the township. We hold that the proper geographic area is the county and affirm the judgment of the circuit court.

The record indicates the following. Twin Manors is a condominium association which represents the 33 homeowners/taxpayers who comprise the Twin Manors condominium association. The real estate is located at 7730 Dempster Street, Morton Grove, Illinois. The collector filed the annual application for order of judgment and sale against real estate returned delinquent for the year 1981, and for judgment fixing the amount of tax paid under protest. Twin Manors filed a specific tax objection pursuant to section 235 of the Revenue Act of 1939 (Ill. Rev. Stat. 1981, ch. 120, par. 716), alleging that the 1981 real estate assessment and taxes are constructively or actually fraudulent. After discovery and pretrial conferences, the collector filed a motion for summary judgment. A hearing was held, and the circuit court entered its order granting the collector's motion for summary judgment and fixing the amount of the objector's real estate taxes for the year 1981.

At the hearing, the parties presented evidence indicating the following. Cook County is divided into 38 townships. The townships are grouped into four assessment districts (quadrants). Twin Manors' real estate is located in Maine Township, which is a part of district 2, the northwest quadrant of the county. Each year the county assessor reassesses one of the districts. In 1981 the assessor performed a quadrennial reassessment of district 2.

Under section 20c—1 of the Illinois Revenue Act of 1939 (Ill. Rev. Stat. 1981, ch. 120, par. 501c—1), condominiums which are owner-occupied as residences for a minimum of six months during the year are assessed on the same basis as single-family residences. According to the Cook County Real Property Assessment Classification Ordinance (Cook County Real Property Assessment Classification Ordinance §§2, 3 (1980)), single-family residences are categorized as class 2 and are assessed at 16% of fair market value.

The 1981 real estate assessment of the subject property was $402,701 and the real estate tax was $59,152.95. Twin Manors calculated, based on the 16% level of assessment provided for in the ordinance, that the condominium units were valued by the county assessor based on a market value of $2,516,881 ($402,701 = 16% of $2,516,881). Twin Manors itself valued the units at $2,688,000 as of January 1, 1981, based on sales of the units during the time period from 1977 to 1981. By comparing the market value it found ($2,688,000) with the market value calculated from the assessment amount ($2,516,881), Twin Manors calculated that the condominium units were assessed at approximately 94% of market value.

Twin Manors presented the results of three studies which allegedly show that other residential property within Maine Township was assessed at only 60% of market value. The first study indicates that the assessor assessed other condominiums located in Morton Grove at 10.78% of market value or 67% of full value. The second study analyzes the 459 sales used in the State of Illinois Department of Revenue 1981 Sales/Ratio Study. This study shows that of 459 class 2 parcels sold in Maine Township in 1980, only nine were assessed at the 16% level of assessment or higher, while the remaining 450 parcels were assessed at a level of assessment lower than the 16% ordinance level. The third study analyzes the sale of 178 single-family homes and condominiums located in Morton Grove during 1981. Of these properties, none was assessed at the ordinance level of assessment. The highest level of assessment was 14.89% of market value, and the median level of assessment was 10.77%.

Twin Manors also pointed to the Illinois Department of Revenue's "Assessment/Sales Ratio Study Findings 1981" publication, which concludes that the median level of assessment for class 2 property in Maine Township for 1981 was 10.51% of market value. Twin Manors calculated that its own property was assessed at 15.35% of market value. Twin Manors summarized the evidence it presented as follows:

| STUDY | LEVEL OF ASSESSMENT (%) |
|---|---|
| 1. Morton Grove Condominiums | 10.78 |
| 2. Maine Township— Class 2 | 10.88 |
| 3. Morton Grove— Class 2 | 10.77 |
| 4. State of Ill. Dept. of Revenue 1981 Study | 10.51 |
| 5. Taxpayer's property | 15.35 |

Twin Manors states that the large size of Cook County and the great number of transfers of real estate in Cook County made a full, countywide study of class 2 property not feasible.

Twin Manors asserts that the evidence shows clearly and convincingly that the subject real estate was assessed at a higher level than comparable properties located in the same township. Twin Manors asserts that the evidence therefore is sufficient to rebut the presumption that the assessment was correct and shifts the burden of going forward with evidence to the collector.

Twin Manors asserts that the township level of assessment should be used in Cook County. Twin Manors cites a number of cases which deal with the issues of disparity of taxation within a taxing district and the competency and weight of evidence in tax assessment cases. Only one of the cited cases involves property in Cook County. (*Apex Motor Fuel Co. v. Barrett* (1960), 20 Ill. 2d 395, 169 N.E.2d 769.) None of the cases stands for the proposition asserted by Twin Manors, that the township is a proper level of assessment. However, Twin Manors contends that case law should be applied to the facts of the instant case with a view towards the unique characteristics of Cook County, including its very dense population and the large number of real estate parcels within its borders. Twin Manors contends that the burden on the taxpayer to show disproportionate assessment at the county level is too heavy. Further, taxation is properly a local function, and taxpayers should be able to compare assessments among their neighbors within their own town to determine whether the assessments are being made uniformly.

An analysis of a taxation of property matter properly begins with a review of the pertinent provisions of the constitution. Section 4(b) of article 9 of the Illinois Constitution (Ill. Const. 1970, art. IX, §4(b)) provides:

> "Subject to such limitations as the General Assembly may hereafter prescribe by law, *counties* with a population of more than 200,000 may classify or to [*sic*] continue to classify real property for purposes of taxation. Any such classification shall be reasonable and *assessments shall be uniform within each class*. The level of assessment or rate of tax of the highest class *in a county* shall not exceed two and one-half times the level of assessment or rate of tax of the lowest class *in that county*. Real property used in farming *in a county* shall not be assessed at a higher level of assessment than single family residential real property *in that county*." (Emphasis added.)

The Constitution thus provides for assessments to be made at

the county level. The Constitution grants the power to the legislature to classify property within a county, and it requires that property within a certain class in a county be assessed uniformly with other property in the same class within the county. The supreme court in *Apex Motor Fuel Co. v. Barrett* (1960), 20 Ill. 2d 395, 169 N.E.2d 769, discussed the constitutional requirement of uniformity. The court stated that "[u]niformity in taxation, as required by the constitution, implies equality in the burden of taxation." (*Apex Motor Fuel,* 20 Ill. 2d at 401; see also *Stephens v. Property Tax Appeal Board* (1976), 42 Ill. App. 3d 550, 356 N.E.2d 355.) The court in *Apex Motor Fuel* further stated:

"The rule of uniformity *** prohibits the taxation of one kind of property within the taxing district at one value while the same kind of property in the same district for taxation purposes is valued at either a grossly less value or a grossly higher value. [Citation.]

Within this constitutional limitation, however, the General Assembly has the power to determine the method by which property may be valued for tax purposes. *** The requirement is satisfied if the intent is evident to adjust the burden with a reasonable degree of uniformity and if such is the effect of the statute in its general operation. A practical uniformity, rather than an absolute one, is the test. [Citation.]" *Apex Motor Fuel,* 20 Ill. 2d at 401.

Among the cases cited by Twin Manors on appeal, the only one which addresses an issue related to the proper geographic area for taxation purposes is *People ex rel. Kohorst v. Gulf, Mobile & Ohio R.R. Co.* (1961), 22 Ill. 2d 104, 174 N.E.2d 182. The court in *Kohorst* held that under the circumstances presented, the proper ratio of underassessment to be applied, in order to provide a proper refund to the taxpayer of discriminatory taxes, was the county ratio rather than the township ratio. (*Kohorst,* 22 Ill. 2d at 114.) Twin Manors points out that the court in *Kohorst* also stated, however, that under the facts of that case, the use of the township ratio "would produce substantially the same result" as would the use of the county ratio. *Kohorst,* 22 Ill. 2d at 114.

The collector responds that courts which previously addressed assessment ratio arguments all refer to the level of assessment throughout the county rather than in any particular township. Further, *People ex rel. Kohorst v. Gulf, Mobile & Ohio R.R. Co.* (1961), 22 Ill. 2d 104, 174 N.E.2d 182, cited by Twin Manors, in which the court looked to the county ratio rather than the township ratio for assessment pur-

poses, arose out of a downstate county where assessments generally are made at the township level. The collector asserts that in Cook County, where assessments originate at the county level, the case is even stronger for using the county level of assessment.

■■ Our review of case law indicates that the courts look to the "assessment level for the county as a whole" (*Will County Board of Review v. Illinois Property Tax Appeal Board* (1981), 100 Ill. App. 3d 506, 508, 426 N.E.2d 1238) in order to determine whether the property at issue is being assessed in accord with the constitutional guarantees of equality and uniformity of taxation (*Apex Motor Fuel Co. v. Barrett* (1960), 20 Ill. 2d 395, 169 N.E.2d 769; *Givens v. Illinois Property Tax Appeal Board* (1980), 84 Ill. App. 3d 218, 405 N.E.2d 821). Further, in determining whether to use a township or county ratio of assessment, the court in *People ex rel. Kohorst v. Gulf, Mobile & Ohio R.R. Co.* (1961), 22 Ill. 2d 104, 174 N.E.2d 182, stated that, under the circumstances presented, "considerations of practicality dictate the use of the county ratio." (*Kohorst*, 22 Ill. 2d at 114.) The parties to the instant appeal have raised considerations of practicality regarding the proper level of assessment for taxation purposes. A discussion of those considerations follows later in this opinion.

Twin Manors also contends that the assessment process effectively revolves around the township, in that the notice requirements and other provisions of the Revenue Act of 1939 (Ill. Rev. Stat. 1981, ch. 120, par. 482 *et seq.* ) reference townships. For instance, section 43 of the Act provides that "the assessment districts shall follow township lines." (Ill. Rev. Stat. 1981, ch. 120, par. 524.) Section 104 requires that quadrennial assessments be published within a "township assessment district" if a newspaper of general circulation is published within that district. (Ill. Rev. Stat. 1981, ch. 120, par. 585.) Section 115 provides for the correcting of assessments "by towns or taxing districts." (Ill. Rev. Stat. 1981, ch. 120, par. 596.) Section 117 states that complaints by taxpayers and certificates of correction by the county assessor "shall be filed by townships with the board of appeals." Ill. Rev. Stat. 1981, ch. 120, par. 598.

The collector responds that, according to statute, Cook County is required to equalize real estate assessments only on an intercounty basis, and not within the county itself. (Ill. Rev. Stat. 1985, ch. 120, par. 627.) In contrast, for counties with less than one million inhabitants, statutory provisions require intracounty equalization. (Ill. Rev. Stat. 1985, ch. 120, pars. 576a, 589(5).) Under sections 146, 148a, 149, and 151 of the Revenue Act of 1939 (Ill. Rev. Stat. 1985, ch. 120, pars. 627, 629a, 630, 632), the Department of Revenue is authorized,

regarding certain counties, to equalize assessments among townships in the same county. The collector contends that those statutory sections, however, do not apply to counties which elect a county assessor, as does Cook County.

Additionally, the collector asserts that in Cook County, county officials perform the duties of assessing, imposing, and collecting real estate taxes. The county assessor is the elected official responsible for assessing real estate in the county, and the county collector is an elected official to collect the taxes. In contrast, township officials in the less populous downstate counties perform the duties of assessing and collecting taxes. Those counties do not elect county assessors.

We find that the statutory sections cited by Twin Manors (Ill. Rev. Stat. 1981, ch. 120, pars. 524, 585, 596, 598) do not support the contention that assessments are to be made according to township. The cited sections provide for: (1) the division of counties with a population of at least one million into four assessment districts, along township lines (Ill. Rev. Stat. 1981, ch. 120, par. 524); (2) the publication of quadrennial assessments in newspapers of general circulation within a "township assessment district" (Ill. Rev. Stat. 1981, ch. 120, par. 585); (3) the correction or revision of assessments "by towns or taxing districts" (Ill. Rev. Stat. 1981, ch. 120, par. 596; and (4) the filing of complaints by taxpayers by townships for review by the board of appeals (Ill. Rev. Stat. 1981, ch. 120, par. 598).

■ These statutory provisions set forth practical guidelines for carrying out the assessment process. The cited provisions do not set forth the criteria for the computation of assessments nor do they determine the classification of property. Section 43 (Ill. Rev. Stat. 1981, ch. 120, par. 524), which provides for the division of Cook County into four assessment districts, does so in order to "divide, as near as may be, the work of assessing the real estate in the county into 4 equal parts." (Ill. Rev. Stat. 1981, ch. 120, par. 524.) The language of section 43 indicates that assessments are made by county, but that for practical purposes, counties with large populations are divided into four assessment districts. For instance, for the larger counties, the assessor's office is able to divide the work of publication of the quadrennial assessments so that it publishes the assessments for only one quadrant of the county per year. (Ill. Rev. Stat. 1981, ch. 120, par. 524.) We agree with the collector that the statute indicates that a countywide level of assessment is to be utilized.

Twin Manors also asserts that an analysis of the real estate tax levied against a Maine Township homeowner indicates that most of the taxing bodies are local and only 16% of the homeowner's tax bill

is paid to the county. The remaining percentage of the homeowner's tax is paid to Maine and Niles Townships. Therefore, Twin Manors asserts, it would be reasonable to look to the township level of assessment for determining uniformity of taxation.

Twin Manors also cites *Poffenberger v. Board of Revision* (1977), 54 Ohio App. 2d 89, 375 N.E.2d 65, in which the Ohio Appellate Court held that the uniformity requirement of the Ohio Constitution was violated where the county assessor, during a sexennial reassessment, reassessed only those parcels which were sold around the time of the reassessment, and failed to reassess other comparable parcels which had not been sold since the prior sexennial reassessment. The Ohio court found that the objector suffered discrimination as a result of the unequal taxation. (*Poffenberger*, 54 Ohio App. 2d at 93, 375 N.E.2d at 67-68.) Twin Manors points out that the Ohio court found sufficient the evidence presented by the objector of seven comparable land parcels located in close proximity to the land in question. *Poffenberger*, 54 Ohio App. 2d at 90, 95, 375 N.E.2d at 66, 69.

The collector responds that class 2 property is located throughout Cook County and not just in certain townships. Further, the collector contends that the more than 600 taxing bodies in Cook County generally overlap township lines. Twin Manors pays taxes to 15 different taxing bodies. Four of those taxing bodies are located throughout Cook County, and several others overlap into a number of different townships. The collector asserts that 69% of Twin Manor's tax burden is accounted for by taxing bodies extending beyond Maine Township's boundaries. A comparison of properties only within Maine Township, therefore, is insufficient.

Further, the collector asserts that the Revenue Act should not be strictly interpreted if the result would be to make it practically impossible for taxing officials to assess, levy, and collect taxes. The collector asserts that the use of a township level of assessment would make it practically impossible for the Cook County assessor to perform his duties. To require a uniform countywide assessment based on an analysis focused on one township would create an impossible requirement.

■ The presumption in tax objection cases is that the assessing officers performed their duty. (*People ex rel. Nordlund v. Lans* (1964), 31 Ill. 2d 477, 202 N.E.2d 543.) Constructive fraud must be proven by clear and convincing evidence. (*People ex rel. Costello v. Lerner* (1977), 53 Ill. App. 3d 245, 250, 368 N.E.2d 976.) The Cook County Real Property Assessment Classification Ordinance provides for an assessment of class 2 property, such as the subject property, at 16%, the lowest assessment rate of any class. (Cook County Real Property

Assessment Classification Ordinance §§2, 3 (1980).) The evidence presented by Twin Manors indicates that its property was assessed at 15.35% of its fair market value, a rate slightly below the rate provided for by the ordinance. The assessment is in accord with statutory provisions.

■ Nor do we find that Twin Manors presented sufficient evidence to indicate that the statute fails to meet the constitutional requirement of uniformity. The constitutional requirement of uniformity is met where: (1) the intent of the statute is to adjust the burden with a reasonable degree of uniformity; and (2) the effect of the statute in its general operation is that it adjusts the burden with a reasonable degree of uniformity. *Apex Motor Fuel Co. v. Barrett* (1960), 20 Ill. 2d 395, 401, 169 N.E.2d 769.

Twin Manors apparently does not challenge the statute based on the first part of the constitutional test, the intent to adjust the tax burden with reasonable uniformity. Twin Manors' argument instead focuses on the effect of the statute specifically on residential property within Maine Township in Cook County. Twin Manors asserts that the disparity in taxing levels between other properties within Maine Township which were assessed at levels between 10.51% and 10.88%, and its own property, assessed at 15.35%, constitutes constructive fraud.

■ We find, however, that Twin Manors has failed to present sufficient evidence to indicate that the effect of the statute in its general operation does not adjust the tax burden with reasonable uniformity. Twin Manors' evidence is limited to three studies of property located within Maine Township. Twin Manors failed to present evidence of assessments of residential (class 2) property in Cook County outside of Maine Township. Therefore, it has failed to show that its property was taxed disproportionately to the other class 2 property throughout the county. (See *Will County Board of Review v. Illinois Property Tax Appeal Board* (1981), 100 Ill. App. 3d 506, 426 N.E.2d 1238.) Even if it was unable to present a comprehensive study of countywide assessments of class 2 property, Twin Manors might have produced some evidence of assessments of class 2 property within areas or townships in the county other than Maine Township. Further, we agree with the collector that a township level of assessment likely would produce insurmountable practical problems for the assessor.

In any event, even if the studies show disparity in the levels of assessment of residential property within the same township, we cannot find that the evidence shows that a township level of assessment, rather than a countywide level, is the proper one. We believe that the

decision to utilize a township rather than a county level of assessment is within the authority of the legislature. Therefore, we find that the trial court's granting of the collector's motion for summary judgment was proper.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Judgment affirmed.

WHITE, P.J., and RIZZI, J., concur.