BOARD OF REVIEW OF GRUNDY COUNTY et al., Plaintiffs-Appellants, v. THE PROPERTY TAX APPEAL BOARD et al., Defendants-Appellees.

Third District No. 3—89—0567

Opinion filed August 10, 1990.—Rehearing denied September 24, 1990.

Frederic S. Lane, of Sonnenschein, Carlin, Nath & Rosenthal, of Chicago (Jacqueline S. Glassman, of counsel), for appellants.

Hopkins & Sutter, and Minard E. Hulse, Jr., Robert A. Creamer, and Thomas J. McNulty, all of Keck, Mahin & Cate, both of Chicago, and James R. Fleming, of Coal City (Paul F. Hanzlik, of counsel), for appellee.

JUSTICE SCOTT delivered the opinion of the court:

Defendant, Commonwealth Edison Company, sought review of the 1979 real property assessments for its Collins generating and Dresden nuclear power stations via the Property Tax Appeal Board (PTAB). After extensive proceedings resulting in a voluminous record, the

PTAB determined on April 6, 1983, that the fair market value of the Collins station was $601,401,700; Dresden was valued at $219,954,924.

Edison's ability to earn a return on its invested capital is regulated by the Illinois Commerce Commission; no purchaser would pay more for these facilities than a sum on which he could reasonably expect to earn a rate of return. Accordingly, the PTAB began its decision by noting that because the subject properties were "regulated," the method of deriving market value would be historic original cost, less accumulated depreciation with, however, certain adjustments. The controversy before the PTAB was principally concerned with the "adjustments." None of the parties sought judicial review of the PTAB determination of market value. The only issue in this appeal is the formula for reducing, or debasing, fair market value to assessed value.

The Department of Revenue's (Department's) sales ratio studies showed assessment levels for the years 1976, 1977 and 1978 of 30.76%, 25.97% and 25.74%, respectively, giving a three-year average level of assessment prior to the 1979 assessment year of 27.49%.

The PTAB was of the view that, having received "probative evidence of fair market value," it was required by section 111.4 of the Revenue Act of 1939 (Ill. Rev. Stat. 1979, ch. 120, par. 592.4) to use a one-year sales ratio study (25.74%) rather than the three most recent years (27.49%) preceding the 1979 tax assessment year in order to determine the proper level of assessment. Accordingly, the PTAB fixed the assessment at $154,800,800 ($601,401,700 x 25.74%) for the Collins station and $56,616,395 ($219,954,924 x 25.74%) for Dresden.

It appears, then, that utilization of the one-year sales ratio study in lieu of the three-year average results in a combined lower real property assessment for these facilities of a little over $14 million for the year 1979. On May 11, 1983, the Board of Review of Grundy County, Illinois, together with four other local taxing bodies, filed a complaint for administrative review in the circuit court of Grundy County asking that the assessments be computed based on the three-year study method, or 27.49% of fair market value. On August 2, 1989, the Grundy County circuit court affirmed the PTAB decision.

The Grundy County Board of Review, joined by Morris Community High School District No. 101 and Morris Elementary School District No. 54—the Collins station is included in the territory of these school districts—appeal. Their sole contention is that the PTAB's use of a one-year sales ratio study rather than the three-year average is error.

Defendant Commonwealth Edison has cross-appealed, urging the use of a third ratio (24.38%) calculated by its statistical expert, Dr. Purushottam Laud, to determine the assessment level for the Collins and Dresden stations.

██ Section 20(1) of the Revenue Act of 1939 (Ill. Rev. Stat. 1979, ch. 120, par. 501(1)) requires that real property "be valued at 33⅓% of its fair cash value." Section 1(24) of the Revenue Act of 1939 (Ill. Rev. Stat. 1979, ch. 120, par. 482(24)) provides that the term "33⅓%" means one-third of actual value "as determined by the Department's assessment to sales ratio studies *for the 3 most recent years preceding the assessment year*, adjusted to take into account any changes in assessment levels implemented since the data for such studies were collected." (Emphasis added.)

 █ Section 111.4 of the Revenue Act of 1939 (Ill. Rev. Stat. 1979, ch. 120, par. 592.4) requires the PTAB to make its decisions "based upon equity and the weight of evidence and not upon constructive fraud." The PTAB apparently interpreted the word "equity" to require use of a one-year study where there was "probative evidence of fair market value." One consequence is that by the very act of appealing to the PTAB, a taxpayer will be assessed according to a different process. The result here would be a reduction in taxes because of the use by the PTAB of a different debasement method. We also observe that public utility real property in general, and the Collins and Dresden properties in particular, are different from residential and commercial properties in that public utility property is ordinarily valued at historic original cost less depreciation, while other property is typically valued by a comparable sales analysis. It also appears that public utility property is not considered in the Department's computation of assessment levels or equalization factors.

Public Act 81—894, enacted September 21, 1979, effective January 1, 1980, amended section 111.2 of the Revenue Act of 1939 (Ill. Rev. Stat. 1979, ch. 120, par. 592.2) by adding the following language: "The board may use a one-year assessment level to be based on relevant sales during the previous year." The foregoing sentence, however, was deleted from the Revenue Act of 1939 via Public Act 86—977.

Subsequent to the filing of the instant case in the circuit court of Grundy County, the Illinois Supreme Court decided *Commonwealth Edison Co. v. Property Tax Appeal Board* (1984), 102 Ill. 2d 443, 468 N.E.2d 953, a Lake County case involving the proper level of assessment of Edison's Zion generating station for the tax years of 1975 and 1976. The court discussed at length the statutory provisions

above set forth (*Commonwealth Edison Co. v. Property Tax Appeal Board* (1984), 102 Ill. 2d 443, 456-57, 468 N.E.2d 953). The first issue in that case is identical to the issue in the instant case; namely, whether the PTAB was required to use sales figures for the three years prior to the year of assessment in arriving at assessed valuation. Edison argued that there was significant inflation in Lake County during the years in question (that argument is also made in the instant case) and that a one-year approach would be closer to the tax assessment date. The supreme court's answer was as follows:

> "The legislature has the power to define the terms, within a statute, in any reasonable manner. (*Modern Dairy Co. v. Department of Revenue* (1952), 413 Ill. 55, 66.) In section 1(24), the General Assembly defined 33⅓% in terms of the Department's assessment-to-sales ratio studies for the three most recent years preceding the assessment date. In so doing, the legislature was attempting to effectuate the constitutional mandate requiring uniformity in levels of taxation. Its definition must be sustained to the exclusion of Edison's nonstatutory alternative.

> Additionally, we find the Board's use of a one-year sales ratio study to be inequitable. Under the Act the local assessor, the board of review, and the Department were required to use the three-year average, which produced a median level of 31.75% for 1975 and a median level of 31.93% for 1976. Whereas, the Board's use of a one-year approach resulted in levels of assessment for 1975 and 1976 of 27.29% and 28.22%, respectively. These levels are far below the statutory target levels set by section 146(2). The inequity of this result prompts us to find that, given the facts and figures of this case, the proper assessment of the property in question can only be reached by application of the three-year approach." *Commonwealth Edison Co. v. Property Tax Appeal Board* (1984), 102 Ill. 2d 443, 457, 468 N.E.2d 953, 954.

On June 6, 1984, following the *Commonwealth Edison* decision discussed above, the PTAB issued a policy statement to all Illinois assessing officers, acknowledging that this decision required the use of the three-year average except in the rare circumstance where the evidence would show conclusively that equity would be served only by use of the one-year assessment level.

On May 20, 1987, all of the parties appeared before the circuit court of Grundy County for oral argument. The assistant Attorney General representing the PTAB stated at that time that the PTAB

"erred in using that one-year level of assessment and they properly should have used the three-year level of assessment." Nevertheless, the circuit judge affirmed the PTAB decision without any memorandum opinion or any effort to distinguish the above *Commonwealth Edison* decision.

In support of its cross-appeal, Edison argues that the railroad assessment cases of the early 1960's, *People ex rel. Hillison v. Chicago, Burlington & Quincy R.R. Co.* (1961), 22 Ill. 2d 88, 174 N.E.2d 175, *People ex rel. Kohorst v. Gulf, Mobile & Ohio R.R. Co.* (1961), 22 Ill. 2d 104, 174 N.E.2d 182, *People ex rel. Wenzel v. Chicago & North Western Ry. Co.* (1963), 28 Ill. 2d 205, 190 N.E.2d 780, support use of the nonstatutory sales sampling technique done by its expert, Dr. Purushottam Laud. In the *Burlington, Gulf,* and *North Western* cases, the railroads were being assessed at full value by the Department of Revenue while locally assessed property was being assessed at not more than 55%, and less than that in some areas, even after giving effect to a multiplier certified by the Department of Revenue. The railroads' claims of discrimination were allowed; appropriate tax refunds were ordered.

██ However, unlike the railroad cases, nothing in this record would support a claim of discrimination against Edison. Dr. Laud may be correct in his assertion that the median ratio of all 11,049 nonfarm tax parcels throughout Grundy County as of January 1, 1979, did not exceed 25.74%, but by definition, the assessments of about half of the other tax parcels in Grundy County would have had to exceed 25.74%. No nonstatutory statistical samplings were done by the railroads such as was done by Edison in the instant case. Indeed, in *North Western,* the court remarked as follows:

> "Our statute requires only that the Department use such means as it deems 'proper and reasonable' to make its studies on assessed valuations, and a mere difference in opinion as to what is the best or most reasonable method is not sufficient to bring the matter within the range of judicial review" *People ex rel. Wenzel v. Chicago & North Western Ry. Co.* (1963), 28 Ill. 2d 205, 216, 190 N.E.2d 780, 786.

*Commonwealth Edison Co. v. Property Tax Appeal Board* (1984), 124 Ill. App. 3d 228, 233, 463 N.E.2d 1331, 1334-35, involved the 1979 assessment of Edison's operating equipment at two plants in Will County, Illinois. The PTAB refused to apply the 24.41% assessment level Edison sought to establish via use of an expert in the field of mathematics and statistics. The circuit court reversed the PTAB on this point. This court reinstated that PTAB determination on the

ground that it was not against the manifest weight of the evidence.

A similar nonstatutory statistical argument by Edison urging that the level of assessment should be determined by an analysis of data for the year immediately prior to and the year subsequent to the tax date was rejected in *Commonwealth Edison Co. v. Property Tax Appeal Board* (1983), 115 Ill. App. 3d 371, 374, 376, 450 N.E.2d 780, 782, 783, *aff'd* (1984), 102 Ill. 2d 443, 468 N.E.2d 948.

Edison's cross-appeal being without merit, the ruling of the court below respecting same must be affirmed.

■ The decision of the Illinois Supreme Court in the above *Commonwealth Edison* case is dispositive of this appeal. Section 1(24) of the Revenue Act of 1939, as amended, must be implemented. That part of the August 2, 1989, judgment of the circuit court of Grundy County affirming the use of a one-year sales ratio study by the PTAB is vacated. This cause is remanded to the circuit court of Grundy County with directions to remand same to the PTAB with instructions to use the 27.49% level of assessment mandated by the Department's assessment to sales ratio studies for the three most recent years preceding the 1979 tax assessment year to determine the proper level of assessment applicable to the Collins and Dresden generating stations.

Affirmed in part; reversed in part and remanded with directions.

HEIPLE, P.J., and BARRY, J., concur.