No. 2--06--0338          Filed: 1-8-08

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| COMMONWEALTH EDISON COMPANY, | ) | Petition for review of an order of the |
| | ) | Illinois Property Tax Appeal Board. |
| Petitioner, | ) | |
| | ) | |
| v. | ) | PTAB Nos. 03--01740.001--C--3 through |
| | ) | 03--01740.017--C--3 |
| ILLINOIS PROPERTY TAX APPEAL | ) | 04--00658.001--C--3 through |
| BOARD, | ) | 04--00658.017--C--3 |
| | ) | |
| Respondent | ) | |
| | ) | |
| (The Kane County Board of Review, | ) | |
| Respondent). | ) | |

JUSTICE O'MALLEY delivered the opinion of the court:

Petitioner, Commonwealth Edison Company (ComEd), appeals the decision of respondent, the Illinois Property Tax Appeal Board (PTAB), denying ComEd's consolidated appeals from the property tax assessments for ComEd's Aurora Township segment of the Electric Junction to Waterman issued by respondent, the Kane County Board of Review (Board of Review), for the 2003 and 2004 tax years. ComEd contends that PTAB used an improper method of valuation for the subject property. We affirm.

The subject property consists of 20 parcels of land with 17 property identification numbers. The parcels are generally narrow corridors of land averaging about 175 feet in width. Across the land are evenly spaced pairs of towers used to suspend high-voltage tension wires. Each pair of towers

is set about 300 feet from the next, and the towers and power lines are placed in the approximate middle of the narrow corridor. The subject property totals just less than 107 acres. The subject property is commonly known as the Aurora Township segment of the Electric Junction to Waterman and comprises a part of ComEd's electrical transmission network or grid.

On April 13, 2004, ComEd filed a tax appeal for the 2003 tax year, seeking a reduction in the property tax assessments for the subject property. The assessor had valued the subject property at $1,351,054. The Board of Review had adjusted the assessment to $537,327. In its tax appeal, ComEd asserted that the valuation of the subject property should have totaled $47,640, based on the historic cost of the various parcels comprising the subject property.

ComEd premised its tax appeal on the idea that the subject property is owned by a regulated utility. ComEd contended that the correct method for determining the fair market value of the subject property was its historic cost. ComEd justified its contention by reasoning that no investor would be willing to pay more for a property than the rate of return that the investor could earn would support. According to ComEd, using the historic cost to determine the fair market value of the property is appropriate because ComEd's rate of return is limited by regulation to an amount based on the historic cost of the property, and because the property is highly specialized and is not the type of property that is bought and sold on the open market.

The Board of Review asserted that any sale of the subject property was no longer regulated following the enactment of the Electric Service Customer Choice and Rate Relief Law of 1997 (Customer Choice Law) (220 ILCS 5/16--101 et seq. (West 2004)) and pursuant to section 7--102(e) of the Public Utilities Act (Act) (220 ILCS 5/7--102(e) (West 2004)), because the subject property did not meet the threshold sales price of $5 million, which would require the approval of the Illinois

Commerce Commission (ICC). From this, the Board of Review reasoned that the deregulation of the sale of that type of property (valued at less than $5 million) invalidated the legal rationale for an historic-cost assessment to determine the fair market value of the property.

Countering the Board of Review's position, ComEd maintained that the sale of the subject property would nevertheless continue to be regulated. ComEd reasoned that a sale of the subject property or a portion of it would disrupt the transmission and distribution network. According to ComEd, the ICC would continue to oversee any proposed sale. Because the ICC also continued to set rates based on the historic or original costs of the property and the infrastructure of the transmission and distribution network, ComEd concluded that valuing the subject property using the historic cost was still mandated.

During the pendency of the appeal of the 2003 tax year assessment, ComEd filed another appeal, this time for tax year 2004. The Board of Review had refused to further adjust the assessed valuation of the subject property, and ComEd raised substantially the same contentions as it had in its appeal of the 2003 valuation.

On September 26, 2005, the PTAB conducted a consolidated administrative hearing on both of ComEd's pending tax appeals. Dr. Karl McDermott testified for ComEd. McDermott was employed as a vice president with National Economic Research Associates (NERA). With NERA, McDermott directed studies of energy utilities, both nationally and internationally, and had participated in numerous rate cases throughout the country, both for ComEd and for other utilities. From 1992 to 1998, before taking employment with NERA, McDermott served as a commissioner with the ICC. While a commissioner, McDermott's duties included determining the rates that various utilities in Illinois could charge their customers. Also during his term as a commissioner, McDermott

was significantly involved in the creation and implementation of the Customer Choice Law. Before becoming a commissioner with the ICC, McDermott served as president of the Center for Regulatory Studies, a nonprofit organization that evolved from the revision of the Act. McDermott testified that he was involved in the revision of the Act. Before his tenure with the Center for Regulatory Studies, McDermott was a staff employee of the ICC and a researcher for the National Regulatory Research Institute. McDermott's academic credentials were concentrated in the field of regulatory affairs.

McDermott testified that the ICC was the agency charged with the responsibility of regulating public utilities. With the passage of the Customer Choice Law, the ICC's role in regulating electrical utilities was not extinguished; rather, the ICC continued to determine the rates that a public utility may charge its customers and to prescribe the utility's operating measures to ensure that the utility service remained safely and reliably delivered. McDermott testified that the Customer Choice Law did not deregulate the electric utility industry but, rather, it restructured the industry by separating the generation of electrical energy from the transmission and distribution of electrical service. The point of the Customer Choice Law was to create competition in the generating sector of the industry while leaving the transmission and distribution sector unchanged.

The Customer Choice Law caused ComEd and other electric utilities to restructure. The electric utilities spun off their generation businesses into competitive subsidiaries or sold them to third parties. ComEd remained a regulated public utility, the sole business of which was to transmit and distribute electricity. McDermott explained that it would be too inefficient and expensive to disturb the natural monopoly ComEd holds in the transmission and distribution sector, because it would make no sense to have multiple sets of competing transmission wires and rights of way. In exchange for

monopoly status, and due to ICC regulation, the public is assured of safe and reliable electrical service at a reasonable price.

McDermott testified that ComEd's primary asset, the transmission and distribution network that includes the subject property, is regulated by the ICC. The Electric Junction to Waterman, as part of the transmission network, is subject to ICC regulation. McDermott testified that this includes the subject property as an integral part of the Electric Junction to Waterman.

McDermott testified that the ICC, and not ComEd, determines the rates that ComEd may charge its customers. The ICC calculates the rates pursuant to a standard, but complicated, formula. The first step in calculating rates is to identify the original cost of the "used and useful" investments. This includes elements like the land, power lines, transmission towers, substations, and the like. These elements are included in the rate base. The ICC values the rate base--including the subject property--at its historic cost.

The ICC's next rate-setting step is to determine the proper rate of return on the utility's used and useful investments. McDermott testified that the rate of return is the weighted average of the cost of borrowing money or issuing stock. McDermott testified that, ultimately, the rate of return is multiplied by the rate base of the property involved in the transmission and distribution of electrical service, and ComEd is then allowed to charge that amount to its customers.

In addition to setting rates, the ICC has the power to approve the disposition of property that is used by or useful to ComEd in connection with its transmission and distribution service. McDermott testified that this power extends to the selection of a prospective purchaser of such property. McDermott testified that, in his opinion, the ICC would limit the purchase price of the subject property to the original cost of acquisition, in order to establish the allowable rates to be

charged to the customers. In other words, according to McDermott, if a purchaser were to pay more than the original cost, then the additional value of the land would not be allowed into the recalculated rate base.

On cross-examination, McDermott agreed that transmission corridor properties, like the subject property, could be leased to a farmer or used for another income-generating activity so long as it did not interfere with the transmission of electricity. McDermott testified that section 7--102 of the Act, allowing the sale of property valued at less than $5 million, applied only to the sale of assets that are not used and useful. McDermott explained that these assets would not be included in the regulated utility rate base. McDermott acknowledged that the language of section 7--102 of the Act did not explicitly say that. McDermott also acknowledged that in all of the cases of which he was aware, historic-cost valuation had been used for buildings and power-generating equipment, and not solely real estate. McDermott further testified that, if a utility were to sell an asset, it would be entitled to sell the asset for whatever price it could get, and the selling price would not need to be approved by the ICC. ComEd could even sell part of the transmission grid to a non-utility at any price, so long as the transmission of electricity was not disturbed or interrupted by the sale. The income, including the excess income over the original cost, however, would have to be accounted for in the next rate adjustment cycle.

Joseph Ryan testified that he is a member of the Appraisal Institute and a licensed real estate appraiser. Since 1991, Ryan has served as the president of the LaSalle Appraisal Group. Ryan has also had experience as an appraiser in the governmental sector, working for the Cook County assessor as director of technical review and working for the Cook County Board of Tax Appeals as

chief deputy for commissioner Harry Semrow. Ryan testified that his appraisal assignments have included utility properties.

Ryan testified that ComEd asked him to prepare a written narrative appraisal for the subject property. Ryan explained his method in setting about to accomplish the assignment. First, Ryan determined that ComEd was a regulated public utility. Next, Ryan determined that ComEd used the subject property in its utility business. Last, Ryan determined that the historic-cost method was the proper method to appraise the property.

Ryan explained that he employed that method because the ICC limited ComEd to a rate of return based on the historic cost of the property and no investor would pay more for a property than the property's rate of return would justify. Ryan also noted that his analysis was derived from both the sales and the income approaches to value. Upon completing his preliminary analysis, Ryan concluded that ComEd did not need an appraisal, because the subject property should be valued at its historic cost, and ComEd had the information needed to determine the historic cost.

Fred Schwer testified that he was currently employed by ComEd as its property tax manager. Schwer had worked for ComEd for 27 years. Schwer testified that, after the passage of the Customer Choice Law, ComEd restructured by spinning off the generating side of its business into Exelon Generation. ComEd remained a regulated public utility, now solely engaged in the transmission and distribution of electricity. Schwer confirmed that the ICC regulated ComEd, determined the rates that ComEd was allowed to charge its customers, and calculated the rates based upon a valuation of ComEd's property using the historic-cost method.

Schwer testified that he was not aware of any ComEd property, used for the transmission and distribution of electricity, that had been sold during his entire 27-year career. Schwer testified that,

without the subject property, ComEd would not be able to transmit and distribute electricity to its customers. Schwer believed that it was very unlikely that ComEd would ever sell the subject property. Schwer testified that if, however, ComEd were to sell the subject property, then he believed that the ICC would have to approve the sale.

ComEd submitted evidence of the historic costs of the various parcels comprising the subject property.[1] Additionally, ComEd submitted records describing its accounting practices and the accounting system required by the ICC and the Federal Energy Regulatory Commission to track the historic cost of ComEd's asset base and to determine the rates it can charge its customers. ComEd asserted that the historic cost of the subject property totaled nearly $125,000. Along with the evidence, ComEd was allowed to submit written closing arguments.

The Board of Review did not present any witnesses but was allowed to submit evidence and a closing argument. The Board of Review submitted its notes and the transcript from the proceedings before it. The Board of Review also submitted the property record cards for all of the parcels of the subject property. During the hearing before the PTAB, the Board of Review acknowledged that it was not aware of the method used by the assessor in determining the valuation of the subject property. However, the Board of Review advocated that the correct approach to value the subject property was an "across the fence" method, which considered the value of the land adjacent to the parcels of the subject property, adjusted for usage and other factors. ComEd was then allowed to

---

[1] We note that ComEd initially failed to submit evidence on the historic costs of the various parcels. Instead, the hearing officer noted the lack and allowed ComEd to submit its evidence after the hearing had closed.

file a reply to the Board of Review's closing argument, in which ComEd asserted that the Board of Review's closing argument exceeded the scope of the PTAB's directions.

On February 27, 2006, the PTAB issued its decision. The PTAB initially recognized that ComEd had neither argued nor demonstrated, based on the evidence of record, that the subject property had been overvalued. Instead, the PTAB recognized that ComEd argued that the Board of Review had used an improper valuation method in assessing the subject property. The PTAB then briefly outlined the main points of the parties' arguments. The PTAB summarized ComEd's contentions as follows. ComEd asserted that, pursuant to section 9--210 of the Act (220 ILCS 5/9--210 (West 2004)), historic or original cost must be used to determine the value of property belonging to a regulated utility. ComEd justified this position because the regulation of the property would restrict the available market for any sale of the property. The PTAB then summarized the Board of Review's position as resorting to the Property Tax Code (35 ILCS 200/9 et seq. (West 2004)) to determine value. The Board of Review also attempted to distinguish the authority upon which ComEd based its historic-cost argument.

Turning to the evidence adduced at the hearing, the PTAB first considered the question of whether ComEd was a regulated public utility. Based on the testimony of ComEd's witnesses, the PTAB concluded that ComEd was a public utility regulated by the ICC. Additionally, the PTAB concluded that the subject property was similarly subject to ICC regulation.

The PTAB next considered ComEd's ability to sell the subject property, either to another utility or to a nonutility entity. Considering the authority cited by ComEd, the PTAB found it to be distinguishable, because the authority involved generating stations rather than transmission corridors. Considering the statutory authority, the PTAB rejected the provisions of the Act as a basis for

requiring the subject property to be assessed using its historic cost. The PTAB noted that the Act did not deal with land valuation for the purpose of ad valorem taxation; instead, it used land valuation for the purpose of setting utility rates. In noting this fact, the PTAB also concluded that section 7--102 of the Act (allowing a utility to sell property valued at less than $5 million without ICC approval) was of no moment to its analysis.

The PTAB next noted that it was possible for ComEd to sell all or part of the subject property as long as such a sale did not affect the electrical transmission and distribution network. The PTAB noted further that, if the sale price of the property were for more than the historical cost, it would be counted against the seller and taken into consideration the next time ComEd's rates were adjusted. Based on this testimony, the PTAB concluded that there was no limitation on the amount for which the subject property could be sold, even if the ICC retained some authority to limit the disposition of the property.

Determining the valuation method to employ, the PTAB turned to the Property Tax Code. It noted that, in cases of special properties, like solar energy property, historic residences, airports and interstate bridges, and other enumerated categories, the General Assembly had explicitly provided for special assessment methods. The PTAB noted that there was no explicit provision setting forth a special assessment method for property used in the transmission and distribution of electricity. Referring to the canon of statutory construction that, where certain items are identified for special treatment, items that are not explicitly enumerated are deemed to be excluded from special treatment, the PTAB concluded that the method of valuation for the subject property should be the same as used for any other property not specifically mentioned in the listing of special methods of valuation. The PTAB concluded that the subject property should be valued and assessed based on section 9--145

of the Property Tax Code (35 ILCS 200/9--145 (West 2004)). Section 9--145 requires property to be assessed at its fair cash value. The PTAB concluded that ComEd had not provided sufficient testimony or documentation to demonstrate the fair cash value of the subject property. Instead, ComEd argued a legal theory that the subject property could not be sold for more than its historic cost and provided documentation to demonstrate the historic cost and that this cost was the fair cash value of the subject property. The PTAB held that the historic cost of the subject property, most parcels of which had been acquired in the 1950s, failed to demonstrate the fair cash value of the subject property for the 2003 and 2004 tax years. The PTAB therefore declined to disturb the Board of Review's assessment decision, even though the evidence provided by the Board of Review--the property record cards and the final valuations of the parcels of the subject property detailed in the assessor's records--was thin. ComEd timely appeals. Du Page County school districts, including Wheaton-Warrenville Community Unit School District No. 200, Glenbard Township High School District No. 87, Glen Ellyn School District No. 41, Elgin School District No. U-46, Elmhurst Community Unit School District No. 205, Marquardt School District No. 15, Community Consolidated School District No. 93, Lemont School District No. 210, Community Consolidated School District No. 180, and Benjamin School District No. 25, were granted leave to file an amici curiae brief in support of the PTAB.

On appeal, ComEd contends that the PTAB erred as a matter of law by rejecting the argument that the historic-cost method was the only available method to value the subject property. Additionally, ComEd points to what it considers to be improper questioning of its witness, McDermott. ComEd contends that the Board of Review posed hypothetical questions to McDermott that were not based on the evidence in the record. ComEd further contends that this error was

compounded because in rendering its decision the PTAB relied on McDermott's answers to the improper hypothetical questions. ComEd also contends that, because the Board of Review changed its theory of the case in mid-stream, ComEd did not receive a fair hearing before the PTAB, entitling it to a new hearing.

Preliminarily, we address our standard of review before moving to the merits of ComEd's appeal. Generally, the administrative agency's findings are deemed to be prima facie true and correct and will not be disturbed on appeal unless they are against the manifest weight of the evidence. Walsh v. Property Tax Appeal Board, 286 Ill. App. 3d 895, 898 (1997), aff'd, 181 Ill. 2d 228 (1998). However, where the issue on appeal concerns the method used to value the property, instead of a difference of opinion over the value of the property, it presents a question of law subject to de novo review. Walsh, 286 Ill. App. 3d at 898.

ComEd initially contends that the PTAB erred by adopting the Board of Review's "across-the-fence" valuation method. We note that in this argument ComEd does not directly attack the value ascribed to the subject property. Accordingly, we review ComEd's contention de novo as it involves only the method used to value the subject property.

ComEd contends that the historic-cost method is the only method available to value the subject property. ComEd reasons that, because the rate it can charge for its services, and hence the rate of return on the investment, is determined based on the historic cost of the property, and because no one would purchase the property for more than the rate of return that could be earned, the original cost represents the fair market value because no buyer would pay more for the subject property than it could earn on the investment. ComEd asserts, in effect, that the historic-cost method is the only

proper method to value the subject property. In support, ComEd points to several cases that it asserts support its historic-cost method. We disagree.

We begin with ComEd's authority. Contrary to ComEd's contention, these do not establish the historic-cost method as the only method available to determine the value of a regulated utility's real property.

ComEd points to Commonwealth Edison Co. v. Property Tax Appeal Board, 102 Ill. 2d 443, 466 (1984), for the proposition that the historic-cost method is "the best method for valuing special purpose properties owned by regulated utilities." ComEd, however, wrenches (repeatedly) the quoted passage out of context and argues that it is the unqualified and universal view of our supreme court regarding the valuation of a regulated utility's real property. This is simply not the case. The relevant passage states:

"Additionally, the Board heard testimony concerning the various approaches for determining the value of the plant. After considering the income approach, the market-data approach, and the cost-replacement approach, the Board found that the best method for valuing special purpose properties owned by regulated utilities was to use the book cost [historic or original cost], because the Illinois Commerce Commission (ICC) recognizes this value in determining the rate base. We note that this finding has not been contested by any of the parties. Further, evidence adduced at the Board hearing showed that [ComEd] included these capitalized operator-training costs in the value of the plant, when estimating its 1975 real property taxes in its rate application before the ICC. As a result, [ComEd] was able to secure a higher utility rate. [ComEd] now urges this court to find that the cost of operator training is not properly included in the value of the plant for purposes of ascertaining

the amount of real property taxes actually due and owing." Commonwealth Edison, 102 Ill. 2d at 466-67.

The above-quoted passage demonstrates that the supreme court, far from endorsing the historic-cost method as the only method available "for valuing special purpose properties owned by regulated utilities," acknowledged that it was not an issue in that case. Instead, it was the PTAB's conclusion after evaluating the different valuation methods. None of the parties challenged the method, so the supreme court was not called upon, and expressly did not, pass on the propriety of the historic-cost method. Further, the passage reveals that the historic-cost method was applied to the ComEd plant (which included electrical generating facilities) along with the real estate on which the plant was located, and not only the real property comprising a transmission corridor, as here. While the historic-cost method of valuation was indisputably used in Commonwealth Edison, the supreme court did not hold that it was the only method available to calculate the value of a regulated utility's real property, or even that it was the best method (noting instead that the PTAB had determined, based on its review of the evidence in the case, that it was the best method available in that case). Instead, the use of the historic-cost method in that case was not even an issue in the appeal. Commonwealth Edison, therefore, is clearly distinguishable from the circumstances of this case and offers no support for ComEd's argument here, that the historic-cost method of valuation is the only valuation method applicable to a regulated utility's real property.

ComEd also points to Board of Review of Grundy County v. Property Tax Appeal Board, 201 Ill. App. 3d 999 (1990), for the proposition that the historic-cost method is the only proper method to value a regulated utility's real property. Once again, however, the issue of method of valuation was not before the court. Board of Review, 201 Ill. App. 3d at 1001 ("None of the parties

sought judicial review of the PTAB determination of market value"). ComEd makes the more percipient point in relation to Board of Review that the historic-cost method was well established and generally accepted as a method for valuing the real property of a regulated utility. Board of Review, 201 Ill. App. 3d at 1002 ("public utility real property *** [is] different from residential and commercial property in that public utility property is ordinarily valued at historic original cost less depreciation, while other property is typically valued by a comparable sales analysis"). The fact, however, that the historic-cost method is a valid method for valuing a regulated utility's real property does not transform it into the (singular) method. ComEd overstates the reasoning of Board of Review in order to create support for its argument on appeal here. Indeed, the language employed by Board of Review suggests that, while the historic-cost method is often used in valuing a regulated utility's real property, other methods may also be appropriate. Board of Review, 201 Ill. App. 3d at 1002 (public utility property is "ordinarily" valued using the historic-cost method; commercial and residential property is "typically" valued using the comparable sales method). We note that "ordinarily" and "typically" imply that other methods may be used in unusual circumstances or where appropriate. Board of Review, 201 Ill. App. 3d at 1002. We also note that the factual circumstances in Board of Review differ because the property being valued included electricity generating facilities. Board of Review, 201 Ill. App. 3d at 1000-01. Thus, while Board of Review suggests that the historic-cost method of valuation may be valid and accepted, it does not support ComEd's proposition that the historic-cost method is the only appropriate method.

ComEd also cites to Commonwealth Edison Co. v. Property Tax Appeal Board, 124 Ill. App. 3d 228, 232 (1984), for the proposition that "the reasonable approach when valuing property of a regulated utility [is] one based on historic cost *** because utility properties are specialized and are

not commonly bought or sold on the market." This appears to more closely support ComEd's position that the historic-cost method is the singular method for valuing a regulated utility's real property. We note, however, that the court found that a valuation based on an agreement not related to any valuation method was inappropriate and accepted the historic-cost method because it was "the method agreed upon by all of the experts who testified" in that case. Commonwealth Edison, 124 Ill. App. 3d at 232. Once again, then, the case suggests that the historic-cost method is an acceptable method but does not foreclose other methods of valuation. Additionally, that case, too, involved the generating facilities and not solely the real property comprising the transmission and distribution system.

ComEd also cites to a PTAB case involving the valuation of the real property comprising a natural gas pipeline transmission corridor, Northern Illinois Gas Co., PTAB Nos. 95--3536--I--3 through 95--3557--I--3 (1998). There, the PTAB rejected the Du Page County Board of Review's across-the-fence method in favor of the historic-cost method to value the property at issue. Northern Illinois Gas, slip op. at 8-9. Significantly, though, the PTAB rejected the across-the-fence method, not because it was an improper method, but, rather, because it had not been sufficiently factually developed and supported. Northern Illinois Gas, slip op. at 9 ("The evidence offered by the [Du Page County] [B]oard of [R]eview [(utilizing an across-the-fence method)] is unexplained, incomplete and inconsistent and will not be relied upon by the [PTAB]"). Also significant to the PTAB decision there was testimony that the regulatory agency would limit the sales price of the subject property to its historic purchase price. Northern Illinois Gas, slip op. at 8. Here, by contrast, there was testimony by ComEd's own witness, McDermott, that a hypothetical sale of the subject property by ComEd would not be limited in sales price by the regulatory agency. Northern Illinois Gas, therefore, is

factually distinguishable from this case and does not prohibit the use of methods of valuation other than the historic-cost method.

Of course, ComEd argues precisely that the Board of Review's evidence of value was not sufficiently factually developed and supported. The argument misses the mark, however, because it fails to acknowledge the burden of proof and the order of proofs. The PTAB has promulgated the following regulations addressing burdens of proof, which we quote in pertinent part:

"(a) Under the principles of a de novo proceeding, the [PTAB] shall not presume the action of the board of review of the assessment of any local assessing officer to be correct. However, any contesting party shall have the burden of going forward.

(b) Under the burden of going forward, the contesting party must provide substantive, documentary evidence or legal argument sufficient to challenge the correctness of the assessment of the subject property. Failure to do so will result in the dismissal of the appeal.

(c) Once a contesting party has provided evidence or argument sufficient to challenge the correctness of the assessment of the subject property, the board of review shall be required to go forward with the appeal. The board of review must provide substantive, documentary evidence or legal argument sufficient to support its assessment of the subject property or some other, alternate valuation. Failure to do so will result in a decision by the [PTAB] based upon the information submitted by the contesting party and, if applicable, the evidence submitted by any intervening party." 86 Ill. Adm. Code §1910.63 (2000).

As can be seen from the PTAB's regulations, it is ComEd, as the contesting party, that has the burden of first producing sufficient evidence or argument to challenge the correctness of the assessment. Here, ComEd did not sustain its burden under section 1910.63(b) and so cannot advance to section

1910.63(c) to make its argument that the Board of Review did not submit any evidence to support its valuation. Thus, Northern Illinois Gas is distinguishable.

Reviewing the argument so far, ComEd has set itself a daunting task: demonstrating that the historic-cost method is the only permissible method of valuing a regulated utility's real property. We note that ComEd did not raise a challenge to the Board of Review's valuation of the subject property, only to the method by which it arrived at the valuation. ComEd did not present any evidence to dispute the Board of Review's determination of value; instead, it presented evidence to support the use of the historic-cost method of valuation. In order to prevail, then, ComEd must succeed in its claim that the historic-cost method of valuation is the only permissible method of determining the fair cash value of a regulated utility's real property, because that was its sole position before the PTAB.

The authority ComEd has chosen does not support this proposition. The PTAB and amici concede, as they must, that the historic-cost method has been used to value the property of regulated utilities. The cases, however, do not go so far as to categorically require that the historic-cost method be used in every case. In fact, even while accepting the historic-cost method, at least one case on which ComEd relies expressly suggested that another valuation method may have been appropriate. Northern Illinois Gas, slip op. at 8 ("Neither party offered an analysis of the subject parcel utilizing the income approach to value to establish the fair cash value of the subject. *** [A]n income approach evaluation may have been appropriate in the present matter"). We note that ComEd has the burden of persuasion on the singular issue it advances. See 86 Ill. Adm. Code §1910.63 (2000) ("any contesting party shall have the burden of going forward. *** Under the burden of going forward, the contesting party must provide substantive, documentary evidence or legal argument sufficient to challenge the correctness of the assessment of the subject property. *** Once

a contesting party has provided evidence or argument sufficient to challenge the correctness of the assessment of the subject property, the board of review shall be required to go forward with the appeal"). The PTAB determined that ComEd did not sustain its burden of persuasion. Our review of the authority and argument advanced by ComEd and the record in this case confirms this conclusion.

We note that our holding is tied to the circumstances of this case. We do not hold that the historic-cost method is an inappropriate method to value the real property of a regulated utility. Rather, we hold that, under the circumstances of this case, where ComEd has argued that the historic-cost method is the only method that can be used, ComEd has not met its burden of persuasion on that issue. Accordingly, we hold that the PTAB did not err in rejecting ComEd's argument regarding the historic-cost method.

Our conclusion is strengthened by considering the pertinent statutory provisions. Section 9--210 of the Act provides that the ICC "shall have power to ascertain the value of the property of every public utility in this State and every fact which in its judgment may or does have any bearing on such value." 220 ILCS 5/9--210 (West 2004). That power, however, is explicitly related to ratemaking: "For purposes of establishing the value of public utility property, when determining rates or charges, or for any other reason the [ICC] may base its determination on the original cost of such property." 220 ILCS 5/9--210 (West 2004); see, e.g., Illinois Bell Telephone Co. v. Illinois Commerce Comm'n, 55 Ill. 2d 461 (1973) (applying provision for ratemaking purposes); Peoples Gas Light & Coke Co. v. Slattery, 373 Ill. 31 (1939) (same). Thus, while section 9--210 of the Act explicitly allows for consideration of the historic cost of property, it is applicable to the ratemaking context and not the property taxation context.

By contrast, section 9--145 of the Property Tax Code provides that property shall be valued for tax purposes as a fraction of its fair cash value. 35 ILCS 200/9--145 (West 2004). The Property Tax Code also provides for different valuation procedures for special properties including solar energy systems (35 ILCS 200/10--10 (West 2004)), historic residences (35 ILCS 200/10--45, 10--50 (West 2004)), airports (35 ILCS 200/10--90 (West 2004)), farmland (35 ILCS 200/10--110 (West 2004)), sports stadiums (35 ILCS 200/10--220 (West 2004)), low income housing projects (35 ILCS 200/10--245 (West 2004)), and properties owned by veterans and fraternal organizations (35 ILCS 200/10--300, 10--350, 10--355, 10--360 (West 2004)). In addition, section 10--230 of the Property Tax Code specified that, from 1997 through 1999, electrical generating plants were to be assessed using the historic-cost method. 35 ILCS 200/10--230 (West 2004). It is well established that, absent any strong indication of a contrary legislative intent, the legislature's decision to enumerate one thing in a statute implies the exclusion of all other similar non-enumerated things. Baker v. Miller, 159 Ill. 2d 249, 260 (1994). Applying this rule of statutory construction to the provisions noted above, and noting that there is no contrary intent discernible in the Property Tax Code, we conclude that the legislature mandated certain specific valuation methods for "special" properties falling within the enumerated categories set forth above. Interestingly, while it set forth a method for electrical generating plants, it did not include other electrical utility real property within that particular provision. 35 ILCS 200/10--230 (West 2004). Likewise, utility transmission corridors are not included in the enumerations of special properties that are to be valued in a particular way. This omission from the list of special properties implies that transmission corridor properties are not to be valued in a particular way but, rather, their fair cash values are to be determined according to the circumstances of the case. Section 10--230 of the Property Tax Code does not change the

conclusion, as it was applicable only from 1997 through 1999 and did not include electrical utility property other than electrical generating plants. The legislative intent discernible in the Property Tax Code, therefore, contradicts ComEd's contention that only the historic-cost method is available to value the subject property.[2]

ComEd argues that the specification of the historic-cost method in section 10--230 of the Property Tax Code supports its contention that the PTAB should have used the historic-cost method to value the subject property. We disagree. ComEd's "should-have" argument subtly changes the emphasis of its contention on appeal and is otherwise not supported. ComEd presented no evidence to show that the subject property had been overvalued. Instead, ComEd's consistent challenge to the PTAB's decision was that it used an improper valuation method. As we noted, section 10--230 refers specifically to electrical generating plants and not to other electrical utility real property, and specifically not to transmission corridors. By its terms, then, section 10--230 would not have been applicable to the subject property during its term of operation, 1997 through 1999. Further, whether the historic-cost method is a viable method to value properties like the subject property is of no moment; the issue posed by ComEd is whether the historic-cost method is the only method that can be used to value a transmission corridor. Respondents do not contest that the historic-cost method has been used in other cases to value properties; they contest only that the historic-cost method is the

---

[2]We note that, by the same token, the Property Tax Code does not forbid the use of the historic-cost method. That, however, is not ComEd's position. ComEd's position in this appeal is that only the historic-cost method, and no other, may be used to value the subject property for taxation purposes.

sole method available to properly value the subject property. Section 10--230 does not support ComEd's contention.

ComEd also approaches the specific-enumeration argument from the opposite tack. ComEd argues that, because the real property of a regulated utility has always been valued using the historic-cost method, the fact that the legislature did not include transmission corridors in the special properties list meant that the legislature intended transmission corridors to continue to be valued according to the historic-cost method. The argument fails because it assumes, without proving, that the historic-cost method is the only acceptable method of valuing transmission corridors. As we have noted above, ComEd has provided no authority that demonstrates this point. Our review of the field indicates that, rather than a singular method for valuing transmission corridors for the purposes of property taxation, the historic-cost method is but one among several methods available. The method chosen depends upon the circumstances of the case.

We also note that ComEd's position in this appeal is directly contradictory to the position it advanced and prevailed with in Commonwealth Edison, PTAB Nos. 98--767--F--1 through 98--776--F--1 (2000). There, the Winnebago County Board of Review had valued all 10 parcels comprising a transmission corridor according to the historic-cost method. ComEd appealed, arguing that the properties should be valued as farmland under section 10--110 of the Property Tax Code (35 ILCS 200/10--110 (West 2004)). The PTAB agreed, and it applied the special property valuation set forth in section 10--110. While this PTAB decision is not binding on the court, we note that it stands for the persuasive proposition that the method of valuation to be employed is dependent on the circumstances of each case.[3] Here, ComEd advances a one-size-fits-all theory that only the historic-

---

[3]As noted above, ComEd cannot complain that the Board of Review has failed to adequately

cost method is a viable valuation method for any and all cases involving transmission corridors. ComEd has failed to sustain its burden of persuasion on this point. Accordingly, we find no error in the PTAB's rejection of this contention.

Alternatively, ComEd complains that the Board of Review provided no evidence to the PTAB to support its claim of valuation of the subject property. We find this contention to be misplaced in the context of this case. ComEd did not advance a claim that the subject property had been overvalued and did not promulgate evidence showing what ComEd thought to be the correct value of the subject property. Instead, ComEd argued only that the Board of Review (and, on appeal, the PTAB) applied the wrong method to arrive at its valuation. By not raising a claim of overvaluation, to say nothing of failing to produce evidence of valuation, ComEd never carried its burden of production on such a claim and never shifted the burden to the Board of Review to support its position on the value of the subject property. See 86 Ill. Adm. Code §1910.63 (2000) ("any contesting party shall have the burden of going forward. *** Under the burden of going forward, the contesting party must provide substantive, documentary evidence or legal argument sufficient to challenge the correctness of the assessment of the subject property. *** Once a contesting party has provided evidence or argument sufficient to challenge the correctness of the assessment of the subject property, the board of review shall be required to go forward with the appeal"). Because of the posture of the case as framed by ComEd, the Board of Review was never called upon to support its

---

develop the circumstances supporting the method of valuation the Board of Review used in this case. ComEd failed, under section 1910.63(b), to sustain its burden of challenging the valuation of the property and is precluded from challenging the Board of Review's assessment under section 1910.63(c).

valuation in the face of contrary evidence provided by ComEd. ComEd's argument ignores the burdens of production and persuasion and, for that reason, fails. Moreover, we note that the Board of Review did provide to the PTAB evidence, albeit thin, of how it reached its valuation of the subject property. As the Board of Review produced some evidence, and because ComEd never properly questioned that evidence within the framework of its tax appeal (see 86 Ill. Adm. Code §1910.63 (2000)), the PTAB remained free to accept the Board of Review's position on valuation. Therefore, we reject ComEd's attempt to shift the burdens of production and persuasion onto the Board of Review in the absence of any properly developed issue of overvaluation of the subject property.

Next, ComEd claims it was prejudiced by the Board of Review's improper use of hypothetical questions in its cross-examination of McDermott. ComEd also claims that the PTAB hearing officer's examination of McDermott was similarly improper. Specifically, ComEd argues that the Board of Review posed improper hypothetical questions that did not have sufficient evidentiary bases. ComEd argues that questions concerning the sale of the subject property to others were unfounded because, historically, there is no evidence that such sales of pieces of the transmission and distribution grid ever occurred. ComEd further contends that the error was compounded when in rendering its decision the PTAB relied on McDermott's responses to the improper hypothetical questioning. We note, however, that ComEd objected to neither the Board of Review's nor the hearing officer's purportedly improper hypothetical questions. As a result of its failure to object to the purportedly improper questioning, ComEd has forfeited this contention on appeal. Lefton Iron & Metal Co. v. Illinois Commerce Comm'n, 174 Ill. App. 3d 1049, 1058 (1988) (failure to object to purportedly improper testimony during administrative hearing results in the forfeiture of the issue on appeal).

ComEd disputes its forfeiture of the issue of the improper questioning by claiming that the PTAB and amici "ignore[] the reality of the administrative proceeding" in suggesting that ComEd should have objected to the hearing officer's questioning. Even if we were to credit this argument, it ignores the fact that the Board of Review posed virtually the same questions as the PTAB's hearing officer and ComEd failed to object to the Board of Review's questions. In any event, ComEd offers no authority in support of its position and we need not consider its argument. See 210 Ill. 2d R. 341(h)(7) (points not argued are forfeited); Evans v. Lima Lima Flight Team, Inc., 373 Ill. App. 3d 407, 417 (2007) (a point that is not supported by citation to relevant authority is deemed to be forfeited).

ComEd's final contention on appeal is that it did not receive a fair hearing before the PTAB. ComEd argues that " '[a] fair hearing before an administrative agency includes the opportunity to be heard, the right to cross-examine adverse witnesses, and impartiality in ruling upon the evidence,' " quoting Abrahamson v. Illinois Department of Professional Regulation, 153 Ill. 2d 76, 95 (1992).[4] ComEd argues first that it was deprived of a fair hearing because the Board of Review changed its theory of the case at the hearing, thereby depriving ComEd of a fair opportunity to be heard. ComEd argues that, before the hearing, the Board of Review argued that the deregulation of the industry pursuant to the Customer Choice Law rendered the historic-cost method inappropriate. ComEd contends that it did not have notice that the Board of Review would instead challenge ComEd's attempt to use the historic-cost method. ComEd asserts that, because it did not have notice of the Board of Review's change of approach, it did not secure an appraisal of the fair cash value of the

---

[4]We accept this definition of the requisites comprising a fair administrative hearing for the purposes of due process.

subject property, even though it could have done so had ComEd had sufficient notice. ComEd concludes that the Board of Review's change in focus affected the evidence it prepared for the hearing and interfered with ComEd's right to be heard.

ComEd's argument fails because it misconceives the burdens of production and persuasion before the PTAB. It is the party contesting the property tax that has the burden of producing sufficient evidence to establish a prima facie case to prevail. If a prima facie case is established, then the burden shifts to the opposing party to refute the prima facie case. See 86 Ill. Adm. Code §1910.63 (2000). ComEd, as the challenging party, had the control over the direction the hearing would take. ComEd chose to challenge the valuation method, even though it also had the choice and opportunity to challenge the valuation itself. ComEd cannot complain that it did not receive a fair opportunity to be heard based on its own strategic choices before the PTAB.

Moreover, the record belies ComEd's claim that it did not receive a fair hearing. The PTAB granted ComEd additional time to submit evidence along with granting ComEd the right to submit new evidence in support of its position after the close of the evidentiary hearing. Further, ComEd was allowed to submit written briefing in support of its position and does not contend that the PTAB in any way limited the evidence or precluded ComEd from advancing any theory in support of its contention that the subject property had been improperly assessed. We reject ComEd's contention.

ComEd also argues that it was deprived of a fair hearing because it did not get to cross-examine adverse witnesses. ComEd does not contend that the PTAB refused to allow it to conduct cross-examination; rather, ComEd contends that the Board of Review's strategic choice not to examine its witnesses resulted in the frustration of ComEd's right to cross-examine adverse witnesses. We disagree. Once again, ComEd, as the challenging party, bore the burden of production and

shaped the issues to be heard in the evidentiary hearing. ComEd cannot complain that it was not allowed to cross-examine adverse witnesses where it was not actually precluded by the PTAB from doing so. Instead, the Board of Review's decision not to call witnesses stems from the fact it perceived that ComEd had not carried its burden of production, obviating its need to examine witnesses in order to contradict ComEd's evidence. Under these circumstances, we reject ComEd's argument.

ComEd also argues that the PTAB's ruling must not have been impartial because the Board of Review produced no evidence in support of its valuation of the subject property. Again, we note that ComEd, and not the Board of Review, had the burden of production. ComEd defined the issue before the PTAB as one of methodology: it had to prove that the historic-cost method was the only available method to value the subject property. Our review of the record demonstrates that ComEd failed to make the necessary showing. As a result, the Board of Review did not have to controvert the evidence ComEd adduced, as ComEd's evidence was insufficient to carry the day. We perceive no partiality in the PTAB decision and reject ComEd's argument.

For the foregoing reasons, the order of the PTAB is affirmed.

Affirmed.

GROMETER and CALLUM, JJ., concur.